# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY BURNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:08-cv-0289 |
| | ) | |
| SALEM TUBE, INCORPORATED and, | ) | |
| UNITED STEEL, PAPER AND | ) | |
| FORESTRY, RUBBER MANUFACTURING, | ) | |
| ENERGY, ALLIED INDUSTRIAL AND | ) | |
| SERVICE WORKERS INTERNATIONAL | ) | |
| UNION, AFL-CIO-CLC, LOCAL 3713-05, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

Presently before the Court for consideration and disposition is the MOTION FOR
SUMMARY JUDGMENT (LIABILITY), with brief in support (Document Nos. 25 & 26) filed
by Plaintiff Jeffrey Burns, the MOTION FOR SUMMARY JUDGMENT, with brief in support
(Document Nos. 29 & 30) filed by Defendant United Steel, Paper and Forestry, Rubber
Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-
CLC, Local 3713-05, and the MOTION FOR SUMMARY JUDGMENT, with brief in support
(Document Nos. 33 & 34) filed by Defendant Salem Tube, Incorporated.  The issues have been
fully briefed, and the matter is ripe for disposition.  For the reasons that follow, Defendants'
Motions for Summary Judgment will be GRANTED, and Plaintiff's Motion for Summary
Judgment will be DENIED.

**BACKGROUND**[1]

Plaintiff Jeffrey Burns ("Burns") was employed by Defendant Salem Tube, Incorporated ("Salem") between February of 2000 and August 30, 2007.  On or about August 1, 2006 and continuing during all relevant times, Burns, Salem and the United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC, Local 3713-05 ("Union") were parties to a collective bargaining agreement ("CBA").  As a party to the CBA, Burns is entitled to the benefit of the agreement and may seek to enforce the provisions of the agreement.

Prior to his first termination, Burns had been disciplined by Salem on numerous occasions for poor workmanship and excessive absenteeism.  (Doc. No. 35 at ¶¶ 5-12).  On August 16, 2005, Burns was terminated from employment due to several alleged unexcused absences.  (Doc. No. 28 at ¶ 7).  However, at the urging of the Union, Salem agreed to reinstate Burns under a "Last Chance Agreement" ("LCA"), which both Burns and Salem signed.  (Doc. No. 35 at ¶¶ 14-16).  At all times relevant to this lawsuit, Burns was subject to the LCA and could be terminated for a breach of either the CBA or the Plant Rules.  (Doc. No. 28 at ¶ 6).  Ultimately, Burns was terminated by Salem for allegedly violating Plant Rule No. 18 (Excessive Absenteeism) and Plant Rule No. 7 (Deliberate Lying).  (*Id.* at ¶ 8).  This second termination occurred on August 31, 2007.  (*Id.*).

In August 2007, Burns worked the 11:00 p.m. to 7:00 a.m. shift at the Salem plant in Greenville, Pennsylvania.  On or about July 12, 2007, Burns received a jury summons by mail from the Court of Common Pleas of Mercer County, Pennsylvania, which directed Burns to be

---

[1] Because Burns must bear the burden of proof at trial, all facts are presented in a light most favorable to him.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

available to report for jury duty daily between August 14, 2007 and August 17, 2007. Pursuant to procedures established by both the Union and Salem, Burns notified plant general foreman David Emmett of the jury duty summons and provided him a copy of same. (Doc. No. 28 at ¶ 15). It was noted on the weekly schedule that Burns had jury duty between August 14, 2007 and August 17, 2007. Burns admits that no one from Salem ever told him not to serve on jury duty, nor did anyone tell him that serving on jury duty was frowned upon or that there was any problem with serving on jury duty. (Doc. No. 35 at ¶ 74); (Doc. No. 44 at ¶ 74).

      Burns was instructed to appear at the Mercer County Court of Common Pleas beginning Tuesday, August 14, 2007, where he was considered for various jury panels, but was not selected. (Doc. No. 28 at ¶¶ 18-19). Upon dismissal, Burns was given both verbal and written juror instructions, both of which directed that he call in after 5:30 p.m. each day in order to find out if he was required to report for jury service the following day. (*Id.* at ¶ 21). Rather than calling on the evening of August 14 as directed, Burns waited until 8:00 a.m. on the morning of Wednesday, August 15, 2007 to call the courthouse. (*Id.* at ¶ 24). Although doing so did not violate the procedures for juror call-ins, waiting until 8:00 a.m. prevented Burns from reporting to work for his Wednesday shift, which ran from 11:00 p.m. Tuesday until 7:00 a.m. Wednesday. (*Id.* at ¶¶ 22-23). When Burns called the courthouse at 8:00 a.m. on Wednesday, he was told not to report to the courthouse, but was told to report the following day, Thursday, August 16, 2007. (*Id.* at ¶ 24). On Thursday, Burns was again considered for various jury panels, but was again not selected to serve on a jury. (*Id.* at ¶ 26).

      Following his dismissal on Thursday, Burns again waited until 8:00 a.m. on Friday before calling the courthouse, at which time Burns maintains that a pre-recorded message informed him

that his jury service had concluded.[2]  (*Id.* at ¶ 27).  In total, Burns was absent from work for four days, including August 14, 15, 16 and 17, and he returned to work on the night of Sunday, August 19, 2007, for his Monday workday shift.  (Doc. No. 38 at ¶¶ 21, 24).

During the week following his jury duty (August 20-24, 2007), questions about Burns' absences arose because the Mercer County Court of Common Pleas reported to Salem that Burns only reported for jury duty on August 14 and 16, while Salem's payroll data indicated four absences.  (Doc. No. 35 at ¶ 34).  Burns was questioned by company representatives regarding his absences the previous week, and Burns reported that the absences were due to his jury service.  (*Id.* at ¶ 25).

On August 27, 2007, Burns met with Salem operations manager Jerry Stoyer ("Stoyer"), Union president David King ("King"), and Union representative Todd Barber ("Barber") regarding the discrepancies between Burns' reported jury service and his actual absences.  (Doc. No. 35 at ¶ 41).  At that meeting, Burns again reported that he had been told to call in at 8:00 a.m. every morning and was therefore unable to work any of the days between August 14 and August 17, 2007.  (Doc. No. 35 at ¶ 43).  At that same meeting, Stoyer explained to Burns that Salem had contacted the Mercer County court administrator, who indicated that Burns was instructed to call after 5:30 p.m. every day he served on jury duty.  (*Id.* at ¶ 44).

---

[2] It is unclear whether Burns was told in person that his jury service concluded at some point Thursday, August 16, or if he learned such information from a recording accessed on Friday, August 17.  Burns maintains that he accessed the courthouse recording on August 17, which informed him that his jury service was concluded.  (Burns Deposition at 42); (Burns Affidavit at ¶ 12).  However, both Salem and the Union have presented evidence from court records and disinterested staff members at the Mercer County Court of Common Pleas indicating that there is no such recording, and that the jurors were dismissed the morning of August 16. (Morin Deposition at 14-15, 25, 28-30).

Following the meeting on August 27, King asked if Burns could secure proof that he had received instructions to call at 8:00 a.m. as opposed to 5:30 p.m., and Burns agreed that he would try to do so. (Doc. No. 38 at ¶ 34). King and Barber both urged Burns to secure the requested proof as soon as possible. (*Id.* at ¶ 35).

Subsequent to the meeting on August 27, Burns never provided any additional documentation or proof to either Salem or the Union to support his statement that he had been told to call the courthouse at 8:00 a.m. each morning to check on his jury status for the day. (*Id.* at ¶ 37). Stoyer and Barber met again on August 30 to discuss Burns' status, however it is disputed whether or not Burns was present, or if he participated by telephone. (*Id.* at ¶ 40). Nevertheless, Burns had still not provided proof of his claim regarding what time he had been instructed to call, thus failing to explain two of his four absences. (*Id.* at ¶ 37).

At the August 30 meeting, Burns was offered the home telephone number of Maurice Keavney, the court jury administrator, so that he could substantiate his claim that he was told to call in at 8:00 a.m., however, Burns refused to take the number. (Doc. No. 35 at ¶ 48). King later asked Stoyer for additional time so that King could obtain the necessary documentation that Burns had failed to provide. (Doc. No. 38 at ¶ 44). Stoyer agreed to the additional time, and King subsequently contacted Keavney at his home and informed him that Burns was facing disciplinary action for the unexplained absences. (*Id.* at ¶¶ 45, 47). Both the Union and Salem contend that Keavney indicated that jurors were told to call in every day after 5:30 p.m. (Doc. No. 35 at ¶ 53). Burns was terminated from employment for alleged violations of the plant rules and the LCA, effective August 31, 2007. (*Id.* at ¶ 69).

After Burns was terminated, he met with King and the grievance chairperson for the Union, David Morrison ("Morrison"). (*Id.* at ¶ 61). At that meeting, King indicated that he

believed that Burns' claim did not seem to have merit.  (*Id.*).  Despite the reservations about

Burns' claim, Morrison called a meeting of the grievance committee to determine whether to file

a grievance on his behalf.  (*Id.* at ¶ 62).  Morrison also invited David Docchio, a Union staff

representative, to attend the meeting.  (*Id.*).  Burns alleges that he was not permitted to attend.

(Burns Affidavit at ¶ 25).  After the independent investigation made by the Union, and in

consideration of the merits of the case, the grievance committee elected to not file a grievance on

behalf of Burns.  (Doc. No. 38 at ¶¶ 55-62).  The committee found that because he was still

subject to the LCA, no arbitrator would be willing to give Burns a "third chance."  *Id.*  Stoyer

substantiated this finding when he testified that an employee on a LCA is held to a higher

standard than other employees.  (Doc. No. 40 at ¶ 39).  The Complaint in this action was filed by

Burns on February 26, 2008.

### STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary judgment] shall be rendered forwith if the pleadings, depositions,
> answers to interrogatories and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  In interpreting Rule 56(c), the United States Supreme Court has stated:

> The plain language…mandates entry of summary judgment, after adequate time
> for discovery and upon motion, against a party who fails to make a showing
> sufficient to establish the existence of an element essential to that party's case,
> and on which that party will bear the burden of proof at trial.  In such a situation,
> there can be "no genuine issue as to a material fact," since a complete failure of
> proof concerning an essential element of the non-moving party's case necessarily
> renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

An issue of material fact is genuine only if the substantive law identifies those facts as critical, and if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the moving party. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts, and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (quoting *Smith v Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the burden on the moving party may be "discharged by 'showing' – that is, pointing out to the District Court – that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party, who may not simply rest on the allegations of the pleadings, but instead must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is speculative, conclusory or "not significantly probative," summary judgment is proper. *Anderson*, 477 U.S. at 249-250.

## DISCUSSION

Burns brought this action under § 301 of the Labor Management Relations Act ("LMRA") and asserts four causes of action against Defendants Salem and Union.  Count I of the Complaint alleges that the Union breached its duty of fair representation under § 301 by failing to file a grievance on behalf of Burns.  Count II alleges that both the Union and Salem breached Article 15 of the CBA by terminating Burns as a result of his jury service.  Count III is a pendant Pennsylvania state law claim which alleges that Salem violated the Pennsylvania jury service statute, 42 Pa. C. S. § 4563.[3]  Count IV is an additional state law claim alleging that Salem violated Pennsylvania public policy by wrongfully discharging Burns as a result of his jury service.

Because each concerned party has moved for summary judgment on all counts of the Complaint, the Court will address each count individually.  For the reasons that follow, the Court finds that summary judgment will be granted for the Union on Count I because Burns has failed to provide any evidence which could lead a reasonable jury to find that the Union acted in an arbitrary, discriminatory or bad faith manner.  Additionally, summary judgment will be granted for the Union and Salem on Count II because Burns has failed to present any evidence that could lead a reasonable jury to conclude that Burns was terminated as a result of his jury duty.  Similarly, summary judgment will be granted for Salem on Count III for substantially the same reasons that defeat Count II.  Finally, summary judgment will be granted for Salem on Count IV because Burns is not an at-will employee, and thus does not have standing to bring

---

[3] 42 Pa. C. S. § 4563(a) states, in pertinent part, that: "[a]n employer shall not deprive an employee of his employment…or threaten or otherwise coerce him with respect thereto, because the employee receives a summons, responds thereto, serves as a juror or attends court for prospective jury service."

such a claim; nor does Pennsylvania law allow for a common law action when a plaintiff has a statutory remedy.

## I.   *§ 301 of the Labor Management Relations Act*

Burns asserts claims against Salem and the Union pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).[4]  In order to prevail on a § 301 claim, a plaintiff must prove two essential and "inextricably interdependent" elements:  (1) that the CBA was breached by the employer; and (2) that the duty of fair representation was breached by the Union.  *Ahmad v. United Parcel Serv.*, 281 Fed. Appx. 102, 104 (3d Cir. 2008).  *See also DelCostello v. Int'l. Bhd. of Teamsters*, 462 U.S. 151, 164-165 (1983).

In suits where an employee sues his former employer and union, "[t]he suit against the employer rests on § 301, since the employee is alleging a breach of the [CBA].  The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act."  *DelCostello*, 462 U.S. at 164.  Due to the hybrid nature of a § 301 claim, plaintiff:

> …must not only show that their discharge was contrary to the contract but ***must also*** carry the burden of demonstrating breach of duty by the Union…The employee may, if he chooses, sue one defendant and not the other; ***but the case he must prove is the same*** whether he sues one, the other, or both.

*DelCostello*, 462 U.S. at 165) (emphasis added) (citations omitted).  Consequently, a § 301 claim requires the plaintiff to prove both the duty of fair representation and breach of the CBA

---

[4] 29 U.S.C. § 185(a) states: "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

claims in order to prevail.  In this case, each branch of the hybrid claim is represented by separate Counts in the Complaint, which the Court will address seriatim.

       **a.**    ***Breach of Collective Bargaining Agreement (Count II)***

In a claim under § 301 alleging a breach of the CBA, the evidence provided by the party with the burden of proof at trial must be relevant to their claim, because "[s]ection 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims "substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (citing *Int'l. Bhd. of Electrical Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 859, n. 3 (1987)).  The *Caterpillar* court found that an action predicated on the interpretation of individual employment contracts distinct from the CBA did not necessarily bring an action within the ambit of § 301, unless the action dealt with particular rights created by the CBA.  *Id.* at 394-395.  S*ee e.g. Bobik v. Thepitt Mfg. Co., Inc.*, No. 92-378, 1992 U.S. Dist. LEXIS 21136, at *5-*6 (W.D. Pa. Aug. 10, 1992) (holding that a state law claim was improperly removed to the district court under the auspices of § 301 because the claim dealt exclusively with rights created by a last chance agreement).[5]

In this case, Burns grounds his § 301 claim on the allegation that Salem breached Article 15 of the CBA.  Article 15 states, in pertinent part, that: "[a]n employee who is called for jury duty shall be excused from work for the days in which he serves.  Service, as used herein,

---

[5] The Court notes that Burns' claim to federal subject-matter jurisdiction may appear tenuous in light of *Caterpillar* and *Bobik*.  However, those cases are distinguishable on the grounds that the plaintiffs in both failed to state a federal claim in their complaint pursuant to 28 U.S.C. §1331 prior to removal from state court.  Plaintiff Burns has properly pleaded a federal question in his complaint, and merely fails to present adequate proof to survive summary judgment.  Additionally, because Count I of the complaint implies application of the National Labor Relations Act, Burns has other grounds on which to establish federal subject-matter jurisdiction.  *See DelCostello*, 462 U.S. at 164.

includes required reporting for jury duty, when summoned, whether or not actually seated as a juror." (Doc. No. 36-2 at 19).  In the arguments advanced by Burns, there is no connection made between his jury duty service and his termination.  Instead, Burns relies solely on his allegation that his termination due to excessive absence, lying, and violation of the LCA were 'pretexts' for a termination based on his jury service.

Burns argues that he did not deliberately lie to Salem and that two absences are not a sufficient basis for termination under either the plant rules or his LCA.  Even assuming *arguendo* the validity of these arguments, they are simply not relevant to the claim at issue.  As already noted, a § 301 claim must arise out of rights created by a CBA or claims "substantially dependent" on analysis of a CBA.  *See Caterpillar*, 482 U.S. at 394.  Burns' argument questions Salem's termination procedure under his LCA and the plant rules, but does not address either the CBA or his jury service.  The LCA is a subsequent agreement that binds Burns (but not Salem) to the terms of the CBA and makes no mention of a right to serve on jury duty.  In fact, the LCA is a separate contract that imposes obligations on Burns that are completely unrelated to his rights under the CBA.  *See Caterpillar*, 482 U.S. at 394-395; *Bobik*, 1992 U.S. Dist. LEXIS 21136 at *5-*6.  Consequently, the Court concurs with *Bobik* and *Caterpillar* in recognizing that rights established by a LCA have no relevance to a § 301 claim because they are independent of and do not require interpretation of the CBA, and are therefore not applicable to § 301 claims. *See Caterpillar*, 482 U.S. at 394-395; *Bobik*, 1992 U.S. Dist. LEXIS 21136 at *5-*6.  An action for breach of the LCA would not trigger this Court's subject-matter jurisdiction.  *See generally Bobik*, 1992 U.S. Dist. LEXIS 21136 at *5-*6.

With regard to the plant rules, Burns fails to point out, and the Court has failed to find, any indication that the plant rules are in any way related to the CBA.  Indeed, neither the LCA

nor the plant rules make any mention of the jury service rights that are the subject of Burns' §

301 claim.  Consequently, Burns fails to offer any proof in support of his claim that he was

terminated in breach of his jury service rights under the CBA.

The Court also acknowledges that Burns admits to having properly notified the plant

general foreman of his jury duty, and was excused for the days he would potentially serve on a

jury.  (Doc. No. 28 at ¶ 15).  The undisputed facts reported to Salem reflect that Burns served on

jury duty for only two days, according to the Mercer County Court of Common Pleas.  (Doc.

No. 38 at ¶ 34).  The termination of Burns reflects this discrepancy between the time he was

absent from work and the time he actually served on jury duty as reported by the courthouse, and

there is no contrary evidence.  Despite Burns' alleged mistaken belief about the proper time to

call the courthouse, the fact remains that he missed work without an excuse, which consequently

resulted in his termination.  Again, Burns provides no facts from which a reasonable jury could

find that Salem was hostile to his participation in jury duty, or that his termination stemmed

from such hostility.

Finally, Salem bolsters its argument by pointing out to the Court that in the prior four

years, numerous employees had served on jury duty without incident, including Jerry Stoyer, the

Salem operations manager.  (Doc. Nos. 36-11 – 36-22).  Although Burns claims that these facts

are not material, he fails to counter with any affirmative evidence of disciplinary actions or

terminations resulting from other Salem employees' jury service.

It is undisputed that at no time did a Salem employee attempt to discourage Burns from

participating in jury duty, nor did anyone threaten him with termination if he were to serve on

jury duty.  Burns simply cannot stand on the allegation that he was terminated as a result of his

jury duty when he presents absolutely no proof to substantiate such an allegation.  *See*

*Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  Consequently, no reasonable jury could find, based on the facts presented by Burns, that Salem breached the CBA by terminating Burns for serving on jury duty, and thus summary judgment is properly granted in favor of Salem as to Count II.  *See Anderson*, 477 U.S. at 248.

        **b.**    **Breach of Duty of Fair Representation (Count I)**

        The Court notes that a hybrid § 301 claim can only succeed if the plaintiff proves *both* a breach of the CBA and a breach of the duty of fair representation.  *See DelCostello*, 462 U.S. at 165.  Therefore, Count I of the Complaint ultimately fails as a matter of law.  *Id.*  However, assuming *arguendo* that Burns could prevail on Count II, the Court concludes that Count I also fails to survive the Union's motion for summary judgment.

        In the second branch of a claim brought under § 301, a union may be held liable for a breach of its duty of fair representation.  *See DelCostello*, 462 U.S. at 164.  The duty of fair representation imposed upon a union stems from its status as the exclusive bargaining representative of the employees.  *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).  Out of respect for this status, courts must extend great deference to the union so as to support the "effective performance of their bargaining responsibilities."  *Air Line Pilots Ass'n. Int'l. v. O'Neill*, 499 U.S. 65, 78 (1991).  In extending such deference, courts require a plaintiff to prove that the union's conduct toward a member of the CBA had been "arbitrary, discriminatory or in bad faith."  *Vaca*, 386 U.S. at 190.  Mere negligence on the part of the union is insufficient to meet such a demanding test.  *United Steelworkers of America v. Rawson*, 495 U.S. 362, 376 (1990); *Bazarte v. United Transportation Union*, 429 F.2d 868, 872 (3d Cir. 1970).

        In cases where an alleged breach is predicated on a union's failure to file a grievance, the Supreme Court has allowed unions broad discretion in determining whether or not a termination

warrants a grievance.  *Chauffeurs, Teamsters & Helpers v. Terry*, 494 U.S. 558, 567-568 (1990)

(citing *Vaca*, 386 U.S. at 185).  This broad discretion allows a union to determine whether a

grievance has merit, but with the caveat that "[an] individual employee has ***no absolute right*** to

have his grievance arbitrated."  *Vaca*, 386 U.S. at 195 (emphasis added).  The Supreme Court in

*Vaca* even went so far as to find that the duty of fair representation is not breached by later

proving that the underlying grievance did in fact have merit.  *Id.*; *Bazarte*, 429 F.2d at 872.

Additionally, the U.S. Court of Appeals for the Third Circuit has established that "[a]n

employee…is subject to the union's discretionary power to settle ***or even to abandon a***

***grievance***, so long as it does not act arbitrarily."  *Bazarte*, 429 F.2d at 872 (emphasis added).

The Court of Appeals for the Third Circuit has even held that a union's complete failure to file a

grievance does not necessarily breach the duty of fair representation.  *See Raczkowski v. Empire*

*Kosher Poultry*, 185 Fed. Appx. 117 at 118-119 (3d Cir. 2006) (not precedential).

Courts have established difficult standards for arbitrary conduct, holding that "a union's

actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's

actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be

irrational."  *Air Line Pilots*, 499 U.S. at 67 (citing *Ford Motor Co. v. Huffman*, 345 U.S. 330,

338 (1953)).  Arbitrariness has been further characterized as being so unreasonable as to be

"without rational basis or explanation."  *See Raczkowski*, 185 Fed. Appx. at 118 (citations

omitted).

The same difficult standard applies for bad faith, where a plaintiff must prove fraud,

deceit or dishonesty on the part of the union.  *Amalgamated Ass'n. of Street, Elec. Ry. & Motor*

*Coach Employees of Am. v. Lockridge*, 403 U.S. 274, 299 (1971).  Finally, a union acts in a

discriminatory manner by treating an employee differently "because of an 'irrelevant and

14

invidious' distinction." *Pererson v. Lehigh Valley Dist. Council, United Bhd. of Carpenters & Joiners*, 676 F.2d 81, 87 (3d Cir. 1982) (citing *Steele v. Louisville & Nashville R.R.*, 323 U.S. 192, 203 (1944)).  Thus, the law is clear that in order for Burns to prove that the Union breached the duty of fair representation, he must provide evidence of the Union's arbitrary, discriminatory, or bad faith handling of his claim.

In support of his Motion for Summary Judgment, Burns presents the Court with an extensive list of the things that the Union and Salem both allegedly 'knew' at the time of his termination, none of which furthers his claim under the established legal test.  Burns ultimately omits several significant factors from his argument which illustrates the startling absence of evidence in support of his case.  *See Celotex*, 477 U.S. at 325.  Additionally, Burns fails to direct the Court to any alternative controlling case law that dictates the standard by which the Union should have abided.

Burns argues that both the Union and Salem knew that he had at most two unexcused absences and was merely mistaken as to when he should have called the courthouse, and that refusal by the Union to pursue a grievance was improper given this knowledge.  These allegations rest on inconclusive evidence, and again fail to distinguish between violations of the CBA and violations of the plant rules and LCA.  The CBA, as provided by Burns in Plaintiff's Second Appendix (Doc. No. 48), indicates that a grievance "shall be defined as a claim of violation of this Agreement or a question of proper application or interpretation of this Agreement."  (*Id.* at Exhibit C).  The alleged violation in this case was a breach of Article 17 of the CBA for termination due to jury duty.  Unfortunately, no evidence has been advanced to prove a violation of the CBA, whereas a § 301 claim cannot be predicated on violations of the LCA and plant rules.  *See Bobik*, 1992 U.S. Dist. LEXIS 21136, at *5-*6.

15

In opposition to Burns, the Union contends that the undisputed facts dictate that no reasonable jury could find that the Union's decision to not file a grievance was arbitrary or irrational. *See Air Line Pilots*, 499 U.S. at 67. Any analysis of the actions undertaken by the Union must be done in light of the factual landscape at the time Burns was terminated. *See Id.* At that time, the Union knew that Burns had been absent from work for more days than was reported by the Mercer County Courthouse. (Doc. No. 35 at ¶ 34). The Union also knew that Burns was subject to a last chance agreement, after having already been reinstated by Salem following his termination for excessive absenteeism. (Doc. No. 38 at ¶ 12). Finally, the Union knew that, despite having been given the opportunity to produce exculpatory evidence, Burns failed to provide any additional documentation or proof in support of his statement that he was told to call the courthouse at 8:00 a.m. each morning. (*Id.* at ¶ 37).

Despite the many reasons to doubt the legitimacy of Burns' claim, King requested more time from Salem in order to obtain the necessary documentation regarding Burns' absences. (Doc. No. 38 at ¶ 44). Once the information obtained by King was found to be in accord with that which Salem uncovered, Morrison took the additional step of convening the grievance committee and inviting Docchio, the Union staff representative, to further discuss whether to file a grievance on behalf of Burns. (Doc. No. 35 at ¶ 62). These actions undertaken by the Union not only show a good faith effort to help Burns, but patently contradict the conclusory allegation made by Burns that the Union 'gave up on him.' *See Anderson*, 477 U.S. at 249-250.

Based on the knowledge possessed by the Union at the time Burns was terminated, no reasonable jury could determine that its actions were arbitrary or irrational. *See Air Line Pilots*, 499 U.S. at 67. The Union had a reasonable belief that any grievance would ultimately fail because Burns had no evidence to support his specific allegation under the CBA, and because it

16

knew that Burns' employment was already subject to a LCA.  The Union also had reason to

doubt the truthfulness of Burns' statements regarding the time he had to call the courthouse

based on the information independently obtained by both the Union and Salem.  Based on this

knowledge, it was neither irrational nor arbitrary to refuse to pursue a grievance, something the

Union was under no absolute duty to do.  *See Vaca*, 386 U.S. at 195; *Bazarte*, 429 F.2d at 872.

Additionally, Burns has presented absolutely no evidence to indicate that he was treated

in a discriminatory manner or that the union engaged in fraud or deceit, as is required to show

bad faith.[6]  Indeed, the Union was completely honest with Burns about its determination that his

claim was without merit.  (Doc. No. 35 at ¶ 61).  Nor did Burns offer any evidence that he was

treated differently from any other employee.  Given the absence of proof offered by Burns,

summary judgment in favor of the Union is properly granted.  *See Celotex*, 477 U.S. at 325;

*Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

Consequently, viewing the facts in a light most favorable to Burns, a reasonable jury

would not be able to find in his favor on either prong of the hybrid § 301 claim he sets forth

under the rights created by the CBA.  *See Caterpillar*, 482 U.S. at 394.  Because Burns has

failed to produce any evidence that could reasonably connect his termination with the two days

he served on jury duty, his claim against the Union and Salem for breach of the CBA must fail.

Additionally, Burns fails to acknowledge the significant effort the Union made in order to

preserve his employment subsequent to his second termination, in addition to having already

---

[6] The Court finds that Burns' argument regarding the alleged 'collusion' between Salem
and the Union is completely without merit.  At the time the LCA was signed, Burns had every
right to pursue a grievance, and never did so.  (Doc. No. 38 at ¶ 16).  Additionally, the mere fact
that the Union pursued a LCA indicates that the Union used its best efforts to preserve Burns'
employment, and provides further evidence of the good faith employed by the Union in
representing Burns.  *See Motor Coach Employees*, 403 U.S. at 299.

reinstated Burns under the LCA.  Based on the scant evidence provided by Burns, no reasonable

jury could find that the Union acted arbitrarily in its refusal to file a grievance, and summary

judgment will be granted in favor of Defendants on Counts I and II.  *See Anderson*, 477 U.S. at

249-250.

## II.      *Pendant State Claims*

Counts III and IV of the Complaint allege additional Pennsylvania state law claims

brought before this Court by virtue of pendant jurisdiction.  The Court notes that in light of the

fact that summary judgment has been granted against Burns on both federal law claims, it is not

entirely necessary to address the state claims.  However, the Court concludes that summary

judgment against Burns is also proper for both Counts III and IV, and will briefly address those

issues.

### a.      *State Law Statutory Claim (Count III)*

In Count III of the Complaint, Burns alleges that Salem terminated his employment

because he served on jury duty, in violation of 42 Pa. C.S. § 4563.[7]  As has already been noted,

Burns (as the party with the burden of proof) has failed to produce sufficient evidence from

which a reasonable jury could find that he was terminated as a result of his jury service.  *See*

*Celotex*, 477 U.S. at 325.  Salem points out that Burns has admitted that ***no one*** from Salem ever

told him not to serve on jury duty, nor did they tell him that serving on jury duty was frowned

upon, or that there was a problem with serving on jury duty.  (Doc. No. 35 at ¶ 74); (Doc. No. 44

at ¶ 74).  Additionally, Salem bolsters its argument in this case by pointing out to the Court that

---

[7] 42 Pa. C.S. § 4563(a) states, in pertinent part, that: "[a]n employer shall not deprive an employee of his employment…or threaten or otherwise coerce him with respect thereto, because the employee receives a summons, responds thereto, serves as a juror or attends court for prospective jury service."

numerous Salem employees had previously served on jury duty without incident, including Jerry Stoyer, the Salem operations manager.  (Doc. Nos. 36-11 – 36-22).

In his Motion for Summary Judgment, Burns merely asserts: "[i]t is absolutely clear that if Burns had not received a juror summons, he would not have been discharged."  (Doc. No. 25 at 16).  No support is provided by Burns to substantiate this conclusory allegation, nor does it explain the reasons provided by Salem for his termination.  *See Anderson*, 477 U.S. at 249-250.  Additionally, Burns alleges that Salem's requests for further documentation constituted 'coercion' as specified in the statute.  Burns cites to no case law in which such a demand was a legitimate ground for bringing an action under 42 Pa. C.S. § 4563, nor does he indicate how *post facto* statements could ever have a coercive effect.  Based on these unsupported allegations, Burns has failed to meet his burden in response to Salem's Motion for Summary Judgment.

Additionally, Salem has met and discharged its burden by highlighting the fatal lack of evidence provided by Burns.  *See Celotex*, 477 U.S. at 325.  Burns simply presents no evidence to indicate that his termination came about because Salem possessed some sort of animus toward his jury service and may not simply rest on his personal unsupported allegations and pleadings.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  Indeed, Salem was merely attempting to correct a discrepancy in its records so that Burns could be properly paid for his jury service, as provided in the CBA.  Accordingly, the motion for summary judgment on Count III filed by Burns will be denied, and the motion for summary judgment filed by Salem will be granted.

### b.      *State Common Law Claim (Count IV)*

In addition to the state statutory claim, Burns also claims that Pennsylvania public policy dictates that he should be allowed to pursue a common law claim against Salem on the

grounds that he was terminated for serving on jury duty.  In its Motion for Summary Judgment, Salem presents two arguments, neither of which is refuted by the evidence advanced by Burns.

The first argument presented by Salem is that Burns is simply unable to bring a common law action where a statutory cause of action has been created by the legislature.  (Doc. No. 39 at 15).  Salem points the Court to 1 Pa. C.S. § 1504, which provides that: "[i]n all cases where a remedy is provided…by any statute, the directions of the statute shall be strictly pursued, and *no penalty shall be inflicted or anything done agreeably to the common law*, in such cases, further than shall be necessary for carrying such statute into effect."  1 Pa. C.S. § 1504 (emphasis added).

Pennsylvania state courts and federal courts sitting in Pennsylvania have both recognized that common law remedies are preempted by statutory remedies under Pennsylvania law.  *See e.g. Galbraith v. Phillips Information Systems, Inc.*, No. 83-6118, 1984 U.S. Dist. LEXIS 19516, at *4 (E.D. Pa. Feb. 14, 1984) (holding that, "when the PHRA provides a statutory remedy for a discriminatory employment practice, then common-law remedies should not be created by the courts."); *Panea v. Isander*, 773 A.2d 782, 789 (Pa. Super. 2001) (holding that Pennsylvania courts "have consistently held that where a remedy is provided by an act of assembly, the directions of the legislature must be strictly pursued and such remedy *is exclusive*." (citations omitted) (emphasis added)).

In this case, Burns has already pursued the appropriate statutory remedy in Count III of the Complaint, and consequently, this Court may not create a common law remedy.  *See Panea*, 773 A.2d at 789.  Additionally, Burns advances no argument in support of why he should be permitted to pursue such a remedy.  The only case cited by Burns is *Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119 (Pa. 1978), which did recognize a common law remedy for

20

wrongful termination, but was decided two years prior to the enactment of 42 Pa. C.S. § 4563 and is thus inapplicable in this case.  Because he fails to rebut the statutory barrier to his common law claim, Burns has been unable to establish that there is any genuine issue as to any material fact, and thus Salem is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56 (c).

      The second argument of Salem contends that Burns is precluded from bringing a common law wrongful discharge claim because he is subject to protection under a CBA.  As a member of the collective bargaining unit at Salem, Burns was not an at-will employee.  Under the decision of the Pennsylvania Superior Court in *Phillips v. Babcock & Wilcox*, 503 A.2d 36, 37 (Pa. Super. 1986), "the wrongful discharge cause of action was never intended to provide a forum to vindicate public policy and punish those who deviate from it."  *Id.*  In so stating, the court refused to extend common law protection to employees with rights created by a CBA by citing to the Pennsylvania Supreme Court decision in *Geary v. United States Steel Corporation*, 319 A.2d 174 (Pa. 1974), which sought to protect those employees *not covered* by labor agreements.  *Phillips*, 503 A.2d at 37.  Finally, although not precedential, the U.S. Court of Appeals for the Third Circuit has held that a state wrongful discharge claim may not be pursued by a party to a CBA in a similar case, where the Union allegedly failed in its duty of fair representation.  *See Raczkowski*, 185 Fed. Appx. 117 at 119.

      In this case, as in *Raczkowski*, Burns has alleged that the Union breached its duty of fair representation, and seeks to bring a state wrongful discharge claim.  Nevertheless, Burns merely cites to cases that expound upon the public policy virtues of preserving a right to serve on jury duty.  What he fails to note is that his right to serve on jury duty already exists in the CBA.  Consequently, this Court must follow the lead of the Pennsylvania courts and the interpretation

of Pennsylvania law undertaken by the U.S. Court of Appeals for the Third Circuit and not extend the common law wrongful termination action to those who enjoy rights under a CBA. Given the overwhelming legal arguments presented by Salem and an almost complete lack of substantive evidence from Burns, summary judgment will be granted in favor of Salem on Count IV.

## <u>CONCLUSION</u>

For the above stated reasons, the Court finds that summary judgment will be granted for the Union on Count I because Burns fails to provide any evidence which could lead a reasonable jury to find that the Union acted in an arbitrary, discriminatory or bad faith manner. Additionally, summary judgment will be granted for the Union and Salem on Count II because Burns fails to present any evidence that could lead a reasonable jury to conclude that Burns was terminated as a result of his jury duty.  Similarly, summary judgment will be granted for Salem on Count III because Burns has failed to present any evidence linking his termination to his service on jury duty.  Finally, summary judgment will be granted for Salem on Count IV because Burns is not an at-will employee, and thus may not bring such a claim; nor does Pennsylvania law allow for a common law action where a plaintiff has a statutory remedy.  An appropriate Order follows.


McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JEFFREY BURNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:08-cv-0289 |
| | ) | |
| SALEM TUBE, INCORPORATED and, | ) | |
| UNITED STEEL, PAPER AND | ) | |
| FORESTRY, RUBBER MANUFACTURING, | ) | |
| ENERGY, ALLIED INDUSTRIAL AND | ) | |
| SERVICE WORKERS INTERNATIONAL | ) | |
| UNION, AFL-CIO-CLC, LOCAL 3713-05, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER OF COURT**

    **AND NOW**, this 7th day of August, 2009, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

    1.    Defendant Salem Tube's motion for summary judgment as to Counts I, III,

and IV is **GRANTED**;

    2.    Defendant Union's motion for summary judgment as to Count II is

**GRANTED**;

    3.    Plaintiff Jeffrey Burns' motion for summary judgment is **DENIED**;

    3.    The Clerk will docket this case as closed.

BY THE COURT:


s/Terrence F. McVerry
United States District Court Judge

cc:     **John P. Corcoran, Jr.**
        Jones, Gregg, Creehan & Gerace
        jpc@jgcg.com

**Richard B. Sandow**
Jones, Gregg, Creehan & Gerace
rbs@jgcg.com

**Robert B. Cottington**
Cohen & Grigsby, P.C.
rcottington@cohenlaw.com

**Marie I. Rivera Johnson**
Cohen & Grigsby, P.C.
mriverajohnson@cohenlaw.com

**Bruce A. Fickman**
United Steelworkers of America
bfickman@usw.org

**Robert J. DeGregory**
United Steelworkers of America
rdegregory@usw.org

**Sasha Shapiro**
United Steelworkers Legal Department
sshapiro@usw.org